USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/05/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TRUSTEES OF THE NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS PENSION FUND, WELFARE FUND, ANNUITY FUND, AND APPRENTICESHIP, JOURNEYMAN RETRAINING, EDUCATIONAL AND INDUSTRY FUND, et al.,

Plaintiffs,

-v-

CCC CUSTOM CARPENTRY CORP.,

Defendant.

26-cv-6783 (LJL)

MEMORANDUM AND ORDER

LEWIS J. LIMAN, United States District Judge:

Petitioners, Trustees of the New York City District Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educational and Industry Fund, Trustees of the New York City Carpenters Relief and Charity Fund, and The Carpenter Contractor Alliance of Metropolitan New York ("Petitioners") petition this Court, pursuant to Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, to confirm an arbitral award entered against Respondent CCC Custom Carpentry Corp. ("Respondent"). *See* Dkt. No. 1 ("Petition"). The Petition is unopposed. For the following reasons, the Petition is granted and the Award is confirmed.

**BACKGROUND**

The following facts are undisputed.

The Trustees of New York City District Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educational and Industry Fund (collectively "ERISA Funds") are employer and employee trustees of multiemployer labor-

management trust fund organized and operated in accordance with the Employee Retirement Income Security Act ("ERISA"). *Id.* ¶ 4. The Trustees of the New York City Carpenters Relief and Charity Fund (the "Charity Fund") are trustees of a charitable organization established under section 501(c)(3) of the Internal Revenue Code. *Id.* ¶ 5. The Carpenter Contractor Alliance of Metropolitan New York ("CCA Metro" and with the ERISA Funds and the Charity Fund, the "Benefit Funds") is a New York not-for-profit corporation. *Id.* ¶ 6.

Respondent is a domestic business corporation incorporated under the laws of the State of New York and an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. § 1002(5), and an employer in an industry affecting commerce within the meaning of Section 501 of the LMRA, 29 U.S.C. § 142. *Id.* ¶ 7. It maintains its principal place of business in Hicksville, New York. *Id.* Respondent is a member of the Association of Wall Ceiling & Carpentry Industries of New York, Inc. (the "Association"), and as such, is bound by all agreements between the Association and the New York City District Council of Carpenters (the "Union"). *Id.* ¶¶ 12–13; Dkt. No. 1-1. The Association and Union are parties to two collective bargaining agreements relevant to this action: a collective bargaining agreement covering the period July 1, 2017 through June 30, 2024 (the "2017 CBA") and a collective bargaining agreement covering the period July 1, 2024 through May 31, 2029 (the "2024 CBA" and with the 2017 CBA, the "CBA"). Dkt. No. 1 ¶¶ 13–14.

The CBA requires Respondent to make contributions to the Benefit Funds for all work within the trade and geographical jurisdiction of the Union and to furnish its books and payroll records when requested by the Benefit Funds for the purpose of conducting an audit to ensure compliance with the required benefit fund contributions. *Id.* ¶¶ 15–16. The CBA further binds employers to the documents, policies and regulations adopted by the Trustees of the Benefit

Funds. *Id.* ¶ 17. One of those policies is the Revised Statement of Policy for Collection of Employer Contributions (the "Collection Policy"). *Id.* ¶ 18. Among other things, the Collection Policy states that "[t]he Outside Accounting Firms engaged by the Funds shall periodically review and/or audit the books and records of all the employers bound by or signatory to a collective bargaining agreement with the District Council or any other agreements under which they are obligated to contribute to the Funds." Dkt. No. 1 ¶ 21.

Pursuant to the CBA and Collection Policy, Petitioners conducted an audit of Respondent covering the period November 18, 2025 through February 17, 2026 (the "Audit"). *Id.* ¶ 25. The Audit revealed that Respondent failed to remit contributions to the Benefit Funds in the principal amount of $155,446.68. *Id.* ¶ 25; Dkt. No. 1-9.

When Respondent failed to pay the sum due under the Audit, Petitioners initiated arbitration before Steven Kasarda (the "Arbitrator"), a designated arbitrator under the Collection Policy. *Id.* ¶¶ 26–27. On May 12, 2026, the Arbitrator noticed the hearing for May 28, 2026. Dkt. No. 1-10. At the hearing on May 28, 2026, Petitioners appeared through counsel. Dkt. No. 1-11. Respondent appeared virtually through its owner and did not question the amount due but stated that it had been trying to reach a payment agreement. *Id.* at 2.

On June 10, 2026, the Arbitrator rendered his award (the "Award"). Dkt. No. 1 ¶ 28; Dkt. No. 1-11. The Arbitrator awarded the Trustees of the Benefits Funds $192,159.10 to be paid forthwith with interest accruing at the annual rate of 8.75% from the date of the Award. Dkt. No. 1-11 at 2–3. The Award consists of: (1) the principal deficiency contained in the Audit of $155,446.68; (2) interest on the principal deficiency of $4,794.34; (3) promotional fund contributions of $1,310.89; (4) non-Audit late payment interest of $28,107.28 for the period

August 1, 2023 through December 2, 2025; (5) attorneys' fees of $1,500; and (6) arbitration costs of $1,000. Dkt. No. 1 ¶ 29.

Petitioners served Respondent with a copy of the Award on June 11, 2026, advising that legal proceedings might be instituted if it was not paid within seven days. Dkt. No. 1-12. Respondent has not paid any portion of the Award, and the Award has not been vacated, modified or corrected and no application for such is pending. Dkt. No. 1 ¶¶ 32–33.

**PROCEDURAL HISTORY**

This Petition was filed on August 7, 2026. Dkt. No. 1. On the same day, Petitioners also filed a memorandum of law in support of the Petition. Dkt. No. 5. Petitioners filed Affidavit of Services on August 17, 2026, reflecting that Respondent was served on August 11, 2026, through the New York Secretary of State and, on August 12, 2026, by sending the Petition and Memorandum of Law in Support of the Petition by first class mail and electronic mail to Respondent's principal place of business. Dkt. Nos. 7–8. On September 3, 2026, Petitioners filed a letter with the Court asking that the Petition be reviewed as an unopposed motion for summary judgment. Dkt. No. 9. The Court issued an order the following day directing that any opposition to the request be filed no later than September 18, 2026, and that Petitioners serve a copy of the order on Respondent. Dkt. No. 10. Petitioners filed a Certificate of Service on September 4, 2026, reflecting that they had served the Court's September 4 order on Respondent by first class and electronic mail. Dkt. No. 11. Respondent has not responded to the Petition.

**DISCUSSION**

The Second Circuit has held that an uncontested petition to confirm an arbitral award should be treated "as akin to a motion for summary judgment based on the movant's submissions." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 109 (2d Cir. 2006). The court must "examin[e] the moving party's submission to determine if it has met its burden of

demonstrating that no material issue of fact remains for trial." *Id*. at 110 (quoting *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004)) (internal quotation marks omitted). "If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary material is presented." *Id*. (emphasis omitted).

The burden on the party who seeks to confirm a labor arbitration arbitral award entered pursuant to a collective bargaining agreement is not onerous. The court's review of "a labor arbitration award is 'narrowly circumscribed and highly deferential.'" *ABM Indus. Groups, LLC v. Int'l Union of Operating Eng'rs, Loc. 30, 30A, 30B, AFl-CIO*, 968 F.3d 158, 161 (2d Cir. 2020) (quoting *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 536 (2d Cir. 2016)); *see Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) ("Judicial review of a labor-arbitration decision pursuant to such a [collective-bargaining] agreement is very limited."). "Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement." *Id.* (citing *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987)). The Court inquires "only as to whether the arbitrator acted within the scope of his authority as defined by the collective bargaining agreement." *ABM Industry Grps, LLC*, 968 F.3d at 161 (quoting *Nat'l Football League*, 820 F.3d at 536); *see Riverbay Corp. v. Serv. Emps. Int'l Union, Loc. 32BJ*, 2023 WL 3738984, at *4 (S.D.N.Y. May 31, 2023).

The Court has examined the Petition and the supporting materials. They satisfy the conditions for confirmation. The Court has subject matter jurisdiction over this action pursuant to Section 301 of the LMRA, 29 U.S.C. § 185. *See Loc. 802, Associated Musicians of Greater*

*N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 88 (2d Cir. 1998) ("Section 301 of the [LMRA] provides federal courts with jurisdiction over petitions brought to confirm labor arbitration awards."). Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a "substantial part of the events or omissions giving rise to the claim occurred [and] a substantial part of property that is the subject of the action is situated" in this District. 28 U.S.C. § 1391(b)(2). The hearing took place in New York, New York. Dkt. Nos. 1-10, 1-11*; see D.H. Blair*, 462 F.3d at 105 ("[T]he FAA's venue provision must be read permissively to allow a motion to confirm, vacate, or modify an arbitration award either where the award was made or in any district proper under the general venue statute."). The Court has personal jurisdiction over Respondent, which is asserted to be organized under the law of New York State and has its last known place of business in New York. Dkt. No. 1 ¶ 7. The arbitrator had the authority to make the Award under the Collection Policy and the CBA. Dkt. No. 1 ¶¶ 17, 19–20. In particular, the Collection Policy and the documents and instruments governing the Funds provide for the resolution of disputes by arbitration. *Id.* ¶ 19; Dkt. No. 1-4 Art. V § 2 (empowering the Trustees to assess and collect the principal amount of contributions determined to be due along with interest, damages, penalties, and other remedies including through arbitration); Dkt. No. 1-8 § VI (1) (providing that "legal action to collect delinquencies shall generally be in the form of arbitration"). The Collection Policy provides that the Trustees "are empowered to designate one or more arbitrators to serve in collection matters" and reflects that Mr. Kasarda is among the arbitrators designated by the Trustees. Dkt. No. 1 ¶ 20; Dkt. No. 1-8 § VI (2).

The CBA and Collection Policy provide that, should the Funds be required to arbitrate a dispute or file a lawsuit over unpaid contributions, the Funds shall be entitled to collect the delinquent contributions, interest on the unpaid contributions or liquidated damages, audit costs,

and reasonable costs and attorneys' fees incurred by the Funds for all time spent in collection efforts, the cost of the payroll review and/or audit, late payment interest, and interest on the award until paid. Dkt. No. 1 ¶¶ 22–23; Dkt. No. 1-2 Art. XVII, § 10; Dkt. No. 1-3 Art. XVII, § 10; Dkt. No. 1-3 Art. XVII, § 10; Dkt. No. 1-8 §§ IV (11), V (1),(4)–(6). The Award is consistent with the CBA and Collection Policy, and the Arbitrator acted within the scope of his authority. *See* Dkt. No. 1-9 (audit calculations).

Petitioners seek interest from June 10, 2026, the date of the Award, to the date of judgment at the annual rate of 8.75%. Under New York law, parties can set the rate of prejudgment interest by contract. *See KLS Diversified Master Fund, L.P. v. McDevitt*, 532 F. Supp. 3d 126, 138 (S.D.N.Y. 2021), *aff'd*, 2022 WL 2759055 (2d Cir. July 13, 2022). In accordance with the Collection Policy, the Arbitrator set the rate of prejudgment interest as 8.75% from the date of the Award through the date of judgment. Dkt. No. 1-11.

Petitioners seek $854.50 in attorneys' fees based on 2.5 hours of work and $490 in costs, comprised of $405 in connection with the costs of this matter and $85 in service fees. Dkt. No. 1 ¶¶ 42–43. The CBA and Collection Policy entitle Petitioners to reasonable attorneys' fees and costs. Dkt. No. 1 ¶ 36; Dkt. No. 1-2 Art. XVII, § 10(a)(4); Dkt. No. 1-3 Art. XVII, § 10(a)(4); Dkt. No. 1-8 § IV (11) (employer is responsible for attorneys' fees and costs in determining the amount of the delinquency and in collecting the delinquency), § V (6) ("Attorneys' fees shall be assessed against a delinquent employer, at the same hourly rate charged to the Funds for such services . . . for all time spent by Collection Counsel in collection efforts . . . ."). In addition, "[c]ourts 'have routinely awarded attorney's fees in cases where a party merely refuses to abide by an arbitrator's award without challenging or seeking to vacate it through a motion to the court.'" *See Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. W.W. Timbers, Inc.*,

2020 WL 1922374, at *4 (S.D.N.Y. Apr. 21, 2020) (alteration adopted) (quoting *Abondolo v. H. & M.S. Meat Corp.*, 2008 WL 2047612, at *4 (S.D.N.Y. May 12, 2008)) (collecting cases). The fee request is based on 0.4 of an hour of time for the partner on the matter at a rate of $430 per hour, and 2.1 hours at a rate of $325 for the law clerk on the matter (who is a 2025 graduate of the University of Michigan Law School). Dkt. No. 1 ¶¶ 38–39; Dkt. No. 1-13. Those fees are reasonable. *See Trs. of the Dist. Council No. 9 Painting Indus. Ins. Fund v. Adel Fia Contracting Corp.*, 2022 WL 1720459, at *2 (S.D.N.Y. May 27, 2022). The costs are reasonable.

**CONCLUSION**

The Petition to confirm the Award is granted and the Award is confirmed in all respects. The Clerk of Court shall enter judgment in the form attached to Dkt. No. 1-14 and shall close this matter.

SO ORDERED.

Dated: October 5, 2026
New York, New York

LEWIS J. LIMAN
United States District Judge